UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAI LUN ZHENG, | No. 1:25-cv-01685-DJC-CKD |
| Petitioner, | |
| v. | ORDER |
| SERGIO ALBARRAN, et al., | |
| Respondents. | |

    Petitioner Kai Lun Zheng has filed a Petition for Writ of Habeas Corpus along with a Motion for Temporary Restraining Order. (*See* Pet. (ECF No. 1); Mot. (ECF No. 2).) Petitioner is a noncitizen who is subject to a removal order to China, which was issued in 2010. Petitioner was previously released from custody when the Government was unable to execute his removal due to the Chinese government's refusal to issue Petitioner travel documents. Petitioner has now been detained pending his removal to China. Petitioner requests that the Court order his release on the basis that, among other things, his detention violates his due process rights.

    The Court converted the Motion for Temporary Restraining Order to a Motion for Preliminary Injunction. (ECF No. 4.) In accordance with the below, the Court grants Petitioner's Motion for Preliminary Injunction. Respondents are ordered to immediately release Petitioner from their custody.

1

## BACKGROUND

Petitioner Kai Lun Zheng, also referred to as Wai Keung Cheung, was born in China in 1969. (Pet. ¶ 4.) Petitioner entered the country in 1992. (*Id.* ¶ 4.) In 2010, a final order of removal was issued by an Immigration Judge. (*Id.* ¶ 6.) After he was released from a prison sentence in 2014, Petitioner was transferred to Immigration and Customs Enforcement ("ICE") custody. (*Id.* ¶ 6.) Petitioner was released on supervision by ICE approximately eight months later, when China would not issue Petitioner travel documents. (*Id.* ¶ 7–8; Opp'n (ECF No. 10) at 2.) Petitioner was again detained by ICE in May 2015, but was released on supervision a few months later due to the continued inability to obtain travel documents from China. (Pet. ¶ 9; Opp'n at 2.) Petitioner represents that he personally attempted to obtain travel documents from the Chinese consulate on two occasions in 2015 and 2024, but the consulate "informed [Petitioner] he was not found on the consular records," and thus Petitioner could not receive a passport or other travel document. (Pet. ¶ 10.) Petitioner remained out of custody until October 15, 2025, when ICE officers re-detained Petitioner. (*Id.* ¶ 13; Opp'n at 2.) Petitioner has remained in ICE custody since his most recent detention.

Petitioner's Motion (now converted to a Motion for Preliminary Injunction) has now been fully briefed (Mot.; Opp'n; Reply (ECF No. 11).) On December 15, 2025, the Court held oral argument on the Motion, at the conclusion of which the matter was taken under submission. (ECF No. 12.)

## LEGAL STANDARD

To obtain preliminary injunctive relief, Petitioner must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). The final two factors "merge when the Government is the opposing party." *Nken v. Holder,* 556 U.S. 418, 435 (2009).

**DISCUSSION**

**I. Likelihood of Success on the Merits**

The Court finds Petitioner has a likelihood of success on the merits of his claim that his re-detention violates 8 C.F.R. § 241(i)(2) and is unconstitutional as it amounts to indefinite detention.[1] It is undisputed that Petitioner is subject to a final removal order. As such, ICE has the authority to detain Petitioner to affect his removal as a non-citizen. *See Phan v. Becerra*, No. 2:25-cv-01757-DC-JDP, 2025 WL 1993735, at *3 (E.D. Cal. July 16, 2025); *see also* 8 U.S.C. § 1231. However, Petitioner was previously released as it was determined that there was no significant likelihood of removal in the reasonably foreseeable future due to the Chinese government's unwillingness to issue travel documents. Where a noncitizen subject to a final order of removal has been released, revocation of that release is governed by 8 C.F.R. § 241.13(i). *See Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025). Section 241.13(i)(2) provides that revocation of release is permissible "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." If ICE has made such a determination, the Court reviews that claim in light of the factors described in 8 C.F.R. § 241.13(f). *See Hoac*, 2025 WL 1993771, at *3. These factors include, but are not limited to:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries,

---

[1] Petitioner originally argued that Respondents had failed to provide Petitioner with an informal interview as required by 8 C.F.R. § 241(i)(3). In the Opposition, Respondents represented that an informal interview had occurred. (Opp'n at 2.) Respondents also provided a copy of the notice provided to Petitioner as well as the statement given by Petitioner in connection with that informal interview. (*See* Guerra Decl. (ECF No. 10-1), Ex. 10.) At oral argument, Petitioner conceded that this evidence showed that Petitioner had been provided with some form of informal interview, though Petitioner still contested its adequacy. Additionally, in their initial Motion, Petitioner raised concerns about the possibility that the Government would seek to remove Petitioner to a third country. However, in response to the Motion, the Government represented that it is not currently seeking to remove Petitioner to a third country. (Opp'n at 8.) As such, neither of these arguments is addressed by this Order.

3

>including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

Additionally, "[section] 1231(a)(6) does not authorize indefinite detention and 'limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.'" *Hilario M.R. v. Warden, Mesa Verde Det. Ctr.*, No. 1:24-cv-00998-EPG, 2025 WL 1158841, at *4 (E.D. Cal. Apr. 21, 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)).  After a six-month period where detention is presumptively reasonable, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Here, Petitioner represents, and Respondents do not contest, that he complied with all the terms imposed on him since his initial release. (Mot. at 12.)  Respondents also do not argue that there is a change in circumstances that renders Petitioner a flight risk or danger to the community.  Instead, Respondents argue that a change in circumstance supported the revocation of Petitioner's release as "[ICE] determined Petitioner's removal was likely to occur in the reasonably foreseeable future." (Opp'n at 4.)

The evidence presently before the Court does not support that such a change in circumstances has occurred.  It is well established that the Chinese government denied two prior Government requests for travel documents for Petitioner, once in 2014 and once in 2015.  Petitioner also represents that he made his own efforts to obtain travel documents in 2015 and 2024 but was denied by the Chinese consulate on both occasions. (Mot. at 5.)  The Motion also notes that China was identified in a

July 11, 2024, letter from several members of Congress to the Department of Homeland Security and the Department of State as one of thirteen "uncooperative or 'recalcitrant'" countries that "systematically refus[e] or needlessly delay[] the repatriation of their citizens."  (Mot. at 2; Nightingale Decl., Ex. C (ECF No. 1-2).)  That letter also notes that, as a result of this recalcitrance, "roughly 100,000 Chinese nationals with final orders of removal remain in the country[.]"  (Nightingale Decl. Ex. C.)  In response to Petitioner's Motion, Respondents filed a declaration from Deportation Officer Refugia Guerra, which states "[a]s of late, ICE has recently been able to obtain travel documents for Chinese nationals and remove them to the People's Republic of China. The Chinese government has been fulfilling travel document requests within forty-five to sixty days, but sometimes in a shorter period of time."  (Guerra Decl. (ECF No. 10-1) ¶ 18.)

In light of the specific evidence regarding both the Government and Petitioner's personal inability to obtain travel documents for Petitioner, the Court affords little weight to the general representations that ICE has had some success obtaining travel documents from China.[2]  Petitioner has been subject to a final order of removal for over a decade.  A plain, unsupported statement that ICE has been able to obtain travel documents from China does not overcome the substantial evidence that Petitioner's removal is unlikely to occur in the reasonably foreseeable future.  *See* 8 C.F.R. § 241.13(i)(2); *see also Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *6 (E.D. Cal. Aug. 20, 2025) ("Respondents' citation to an isolated reported instance of the Chinese government accepting deportees does not, by itself, demonstrate changed circumstances regarding petitioner in particular.").  Petitioner has thus shown it is likely that there is no change in circumstances that will allow his

---

[2] This generalized statement regarding success in obtaining travel documents from China does not reflect consideration of the required factors under 8 C.F.R. § 241.13(f) as they relate to Petitioner specifically.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *6 (E.D. Cal. Aug. 20, 2025).

removal to China in the reasonably foreseeable future as required by 8 C.F.R. § 241(i)(2) in order to justify his re-detention.

On largely the same basis, Petitioner has established a likelihood of success on the merits that his detention violates due process as indefinite. Petitioner has cumulatively been detained for longer than six months. As found above, Petitioner has established that there is no significant likelihood that his removal is reasonably foreseeable. Respondents have failed to rebut this showing. *See Zadvydas*, 533 U.S. at 701. Accordingly, Petitioner has shown that he has a likelihood of success on the merits of his claims.

In their Opposition, Respondents argue that the Court does not jurisdiction to enjoin Petitioner's removal to China. (Opp'n at 8.) This Order does not enjoin or otherwise address Petitioner's removal. Rather, this Court's determination is based on the fact that China has not yet issued travel documents to effectuate Petitioner's removal. If China provides travel documents such that Petitioner's removal can be effectuated, Respondents may seek to modify this Order by filing a noticed motion before the undersigned.

## II. Irreparable Harm

Petitioner has also established that he will suffer irreparable harm in the absence of preliminary injunctive relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Ninth Circuit has acknowledged the "irreparable harms imposed on anyone subject to immigration detention[,]" including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez*, 872 F.3d at 995. Moreover, Petitioner has remained out of custody, without incident, for many years. He states that he will likely lose employment as well as be deprived of family and community connections. (Mot. at 30–31.) As such, Petitioner has satisfied the irreparable harm factor.

**III. Balance of the Equities and Public Interest**

The final two *Winter* factors merge when the government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). Here, the balance of equities and public interest weigh clearly in Petitioner's favor. Public interest concerns are also implicated, as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations and citations omitted). "The government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (internal quotations and citations omitted). Similarly, "[t]he public has a vested interest in a federal government that follows its own regulations." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025). Moreover, the "public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1037 (N.D. Cal. 2025). Based on the above, the balance of equities clearly weighs in Petitioner's favor where Petitioner has a likelihood of success in showing that his re-detention violated federal regulations and his constitutional rights.

**IV. Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). The Court finds that no bond is required because Respondents face no realistic likelihood of harm from enjoining their conduct. *Id*.

////

**CONCLUSION**

In accordance with the above, the Court ORDERS that:

1. Petitioner's Motion for Preliminary Injunction (ECF No. 2) is GRANTED;
2. Respondents are ordered to immediately release Petitioner Kai Lun Zheng, also known as Wai Keung Cheung, from their custody. Respondents shall not impose additional restrictions on him than were already present prior to Petitioner's current detention, unless they are determined to be necessary at a future pre-deprivation/custody hearing.
3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent a showing to the Court that there is a change in circumstances to warrant Petitioner's re-detention.
4. This matter is referred to the assigned Magistrate Judge for all further pretrial proceedings, *see* L. R. 302(c)(17), with the exception of any motion to modify the terms of this Order.

IT IS SO ORDERED.

Dated:   **December 16, 2025**

*Daniel J. Calabretta*
Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE